JUSTICE MCDONOUGH
delivered the Opinion of the Court.
This is an appeal from an order of the Worker’s Compensation Court, concluding that subsections (3)(a) and (b) of § 39-71-119, MCA *149 (1987), violate Article II, Section 4 of the Montana Constitution. We reverse.
The sole issue on appeal is whether the Workers’ Compensation Court erred in concluding that subsections (3)(a) and (b) of § 39-71-119, MCA, violate Article II, Section 4 of the Montana Constitution, which states ... “[n]o person shall be denied the equal protection of the laws ...”
Gary Stratemeyer (Stratemeyer) was a deputy sheriff for Lincoln County from 1982 to 1990. On May 4, 1990, Stratemeyer was called by the Sheriff’s dispatcher to respond to a suicide attempt near the Libby office. When he arrived at the home, he was led to a back bedroom where he found a 17 year old girl being held by her father. She had shot herself in the head but was still alive. Respondent took the girl from her father’s arms and administered first aid, including cardiopulmonary resuscitation, until the ambulance arrived.
When the ambulance arrived, the respondent helped the crew carry her to the ambulance. He then served as an escort for the ambulance to the hospital where he learned the girl had died. He was then called away from the hospital to another accident scene.
Thereafter, the respondent was continually plagued by thoughts of the girl’s suicide. Afew weeks after the suicide, the respondent took sick leave because of anxiety over the event. He continued to suffer anxiety problems and was unable to return to work. Stratemeyer submitted a claim for Workers’ Compensation on May 25,1990, for a mental stress injury suffered during his employment as a police officer. The claim was denied on the basis that he had not suffered a “compensable injur/’ as defined by statute. (Statutory law prohibits coverage for a mental (stress) injury suffered without a physical component.) He then petitioned for a hearing before the Workers’ Compensation Court for coverage of his medical costs and lost wages.
That court concluded that he did not suffer a “compensable injur/’ within the language of § 39-71-119, MCA. The Workers’ Compensation Court also determined that this statute violated respondent’s right to equal protection of the law because “claimant has been denied compensation based on the nature of his disability without regard to its cause as being work-related.” Respondent contended, and the Workers’ Compensation Court concluded, that the statute at issue was unconstitutional because it violated equal protection of the law.
There are limitations governing a court’s ability to declare a statute unconstitutional. We take cognizance of the following cautions:
*150 [I]t is our sacred duty to measure the Act by the terms of our constitutional limitations, as we interpret them. “It must be evident to anyone that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility. The legislative and judicial are co-ordinate departments of the government of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly while acting within the limits of its authority be subjected to the control or supervision of the other without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it. The Constitution apportions the powers of governments but it does not make any one of the three departments subordinate to another when exercising the trust committed to it. The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it.”
State v. Dixon (1923), 66 Mont. 76, 84-85, 213 P. 227, 229.
Additionally:
When a legislative course of action expressed in statutes or budgetary laws is tested for constitutionality under the State Constitution, our review is circumscribed by certain principles. We must give the state constitutional provision a broad and liberal construction consistent with the intent of the people adopting it to serve the needs of a growing state. The constitutional provision should receive a reasonable and practical interpretation in accord with common sense. The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.
Fallon County v. State (1988), 231 Mont. 443, 445-46, 753 P.2d 338, 339-340. (Citations omitted.) Every possible presumption must be *151 indulged in in favor of the constitutionality of the Act. See State v. Safeway Stores, Inc. (1938), 106 Mont. 182, 199, 76 P.2d 81, 84.
With these principles in mind, we turn to the standard of review for Workers’ Compensation cases challenging a statute on the basis of equal protection. We have enunciated the following:
[T]he right to receive Workers’ Compensation benefits is not a fundamental right which would trigger a strict scrutiny analysis of equal protection. Nor does this statute infringe upon the rights of a suspect class.
When a right determined to be less than fundamental is infringed upon by classification, the test applied by this Court is the rational relationship test. That is, does a legitimate governmental objective bear some identifiable rational relationship to a discriminatory classification.
Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 42-43, 744 P.2d 895, 897 (Citations omitted). In other words, is the classification (means) used to accomplish a legitimate governmental objective rational? The statute at issue here, because it affects no fundamental right or suspect class, must be analyzed under the rational basis test.
Section 39-71-119, MCA, excludes from the definition of injury work-related injuries that do not have a physical component. Section 39-71-119, MCA, reads as follows:
(1) “Injury... means:
(a) internal or external physical harm to the body.
(3) “Injury” or “injured” does not mean a physical or mental condition arising from:
(a) emotional or mental stress; or
(b) a non physical stimulus or activity.
The Workers’ Compensation Court concluded that the respondent’s injury was not covered under § 39-71-119, MCA, because it was a mental injury. The Workers’ Compensation Court further concluded that the statute was unconstitutional because it improperly excluded people with mental injuries with no physical component from compensation under the Workers’ Compensation Act in violation of equal protection of the law. In applying the rational basis test to the exclusion for above conditions without a physical component, the Workers’ Compensation Court stated that “[i]f a rational basis exists for the classification created by section 39-71-119, MCA (1987), the *152 legislature must provide it. The Court may not speculate to find it.” The court concluded that the classification did not meet the rational basis test because it could glean no purpose for the legislation from the statute itself or its legislative history.
However, appellant argues that the Workers’ Compensation Court should have sought “any combination of purposes that the Legislature might have been attempting to achieve” in enacting § 39-71-119, MCA. The Ninth Circuit has stated: “[i]n our review of governmental purposes,... we need not rely only upon those purposes the legislature, litigants, or district court have espoused, but may also consider any other rational purposes possibly motivating enactment of the challenged statute.” Mountain Water v. Mont. Dept. of Public Serv. Reg. (9th Cir. 1990), 919 F.2d 593, 597. See also; Kadrmas v. Dickinson Public Schools (1988), 487 U.S. 450, 462-463, 108 S.Ct. 2481, 2490, 101 L.Ed.2d 399; Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 43, 744 P.2d 895, 897; ([although this Court could speculate as to why the legislature elected to treat these select individuals differently under the Workers’ Compensation laws ....) (Emphasis added.) The purpose of the legislation does not have to appear on the face of the legislation or in the legislative history, but may be any possible purpose of which the court can conceive. In this case, the Workers’ Compensation Court expected the legislature to provide the purpose. This, however, is not required of legislation being examined relative to equal protection.
Appellant contends that the Workers’ Compensation Court ignored the rule that legislation is presumed to be constitutional. Further, it did not require the respondent to meet his burden of proving the statute was unconstitutional. Appellant claims the respondent provided no testimony, no evidence nor any case law to argue that the statute was invalid. Respondent merely argued that the distinction between physical and mental injury claims was nonsensical and unfair.
This Court concludes that the Workers’ Compensation Court did not properly apply these rules for analyzing legislation under an equal protection challenge. The Workers’ Compensation Court did not presume the statute to be constitutional and look to any possible legitimate purpose for the legislation. However, resolving doubts in favor of the legislation in minimum level scrutiny cases is the proper approach because:
[i]n the utilities, tax, and economic regulation cases, there are good reasons for judicial self-restraint if not judicial deference to *153 legislative judgment. The legislature after all has the affirmative responsibility. The courts have only the power to destroy, not to reconstruct. When these are added to the complexity of economic regulation, the uncertainty, the liability to error, the bewildering conflict of the experts, and the number of times the judges have been overruled by events — self-limitation can be seen to be the path to institutional prestige and stability.
The Court is aware, too, of its own remoteness and lack of familiarity with local problems. Classification is dependent on legislative purpose. Legislative purpose is dependent on the peculiar needs and specific difficulties of the community. The needs and difficulties of the community are constituted out of fact and opinion beyond the easy ken of the Court.
Joseph Tussman and Jacobus tenBroek, The Equal Protection of the Laws, 37 Cal. L. Rev. 341, 373 (1949). The legislature is simply in a better position to develop the direction of economic regulation, social and health issues.
Neither did the Workers’ Compensation Court place a burden upon the respondent to bring evidence forward to show the statute was unconstitutional. In fact, the Workers’ Compensation Court looked to the appellant for evidence that the statute was constitutional. “There is not a scintilla of fact, statistical or otherwise to demonstrate any actual cost or cost savings associated with the broad brush of exclusion brought by this legislation.” The “heavy burden”, however, rests with the party challenging the statute. Kadrmas, 487 U.S. at 463, 108 S.Ct. at 2490.
Even a cursory glance at the legislative history and statute indicates a concern over the high cost of the Workers’ Compensation program to the State of Montana and the employers involved in the program. It is evident that this was the primary purpose for the legislative changes in the Workers’ Compensation Act. “[P]romoting the financial interests of businesses in the State or potentially in the State to improve economic conditions in Montana constitutes a legitimate state goal.” Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 48, 776 P.2d 488, 504. (Citation omitted.) A purpose would be to provide for injured workers at a reasonable cost.
In addition, there are problems relative to mental stress claims, and they have caused a reluctance in some states to compensate for these claims. As we stated in Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 379, 546 P.2d 1055, 1057:
*154 Workmen’s compensation cases normally deal with physical injury resulting from an accident, as the term is used in everyday language. When a shipping crate falls on a worker breaking a bone or two, the causation and the tangible happening are easily identifiable. In the present case we are dealing with a nervous disability, which may or may not be causally related to the employment situation.
The exclusion of mental claims rationally relates to the possible goal of reducing costs and having a viable program for the State and the enrolled employers and employees in the workers’ compensation field.
Disallowing mental, or stress claims occurring without a physical component, while quite unfortunate for some, does not violate equal protection of the law.
The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.
Eastman v. Atlantic Richfield Co. (1989), 237 Mont. 332, 339, 777 P.2d 862, 866, citing Williamson v. Lee Optical Co. (1955), 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563. (Citations omitted.) As we have stated in State v. Safeway Stores, Inc., 76 P.2d at 87, to wit:
On this phase of the question we again quote with approval from the West Coast Hotel [Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937)] Case, supra, wherein the court said: “This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature ‘is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.’ If ‘the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.’ There is no ‘doctrinaire requirement’ that the legislation should be couched in all embracing terms.”
The concern over problems of administration of the Workers’ Compensation program which prompted changes in the 1987 Workers’ Compensation legislation might reasonably have called for a *155 cautious approach. As stated in Joseph Tussman and Jacobus tenBroek, The Equal Protection of the Laws, 37 Cal. L. Rev. 341, 349 (1949):
[t]he ‘piecemeal’ approach to a general problem, permitted by under-inclusive classifications, appears justified when it is considered that legislative dealing with such problems is usually an experimental matter. It is impossible to tell how successful a particular approach may be, what dislocations might occur, what evasions might develop, what new evils might be generated in the attempt to treat the old. Administrative expedients must be forged and tested. Legislators, recognizing these factors, may wish to proceed cautiously, and courts must allow them to do so.
Here, it is fairly obvious that the legislature was attempting to improve the financial viability of the system. This, they can do by rational means without violating the equal protection clause. Eastman, 777 P.2d at 866; Williamson, 348 U.S. at 489, 75 S.Ct. at 465.
Applying the general rules for analyzing the constitutionality of a statute under the rational basis test, the Court concludes that the classification at hand rationally relates to a legitimate governmental objective of controlling the costs of the program and providing benefits.
Reversed.
CHIEF JUSTICE TURNAGE, JUSTICES HARRISON, GRAY and WEBER concur.