No. 95-044

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

ADAM GANZ,

       Plaintiff and Appellant,

    v.

UNITED STATES CYCLING FEDERATION;
MISSOULA DOWNTOWN ASSOCIATION; AND
JOHN DOES, as employees and/or agents
of United States Cycling Federation,
and/or Missoula Downtown Association,

       Defendants and Respondents.

FILED

OCT 3 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Thomas J. Beers, Larry Howell; Connell, Beers &
           Alterowitz, Missoula, Montana

       For Respondents:

           Gary L. Graham; Garlington, Lohn & Robinson,
           Missoula, Montana

Submitted on Briefs:  July 27, 1995

Decided:  October 3, 1995

Filed:

_____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Adam Ganz appeals from a jury verdict, Fourth Judicial District Court, Missoula County, in favor of defendants United States Cycling Federation and Missoula Downtown Association. We affirm in part, reverse in part and remand.

The following issues are raised on appeal:

1. Did the District Court err in instructing the jury that the internal USCF documents be considered only for the purpose of showing the knowledge of the USCF at the time of the incident?

2. Did the District Court err in refusing to admit the "Guidelines to Risk Management" as an exhibit?

3. Did the District Court err in giving a jury instruction which allowed the jury to consider the USCF's customary practices at other cycling events?

4. Did the District Court err in refusing to give Plaintiff's Proposed Jury Instruction Number 18?

5. Did the District Court err in refusing to instruct the jury that Ganz was not negligent?

6. Did the District Court err in refusing to grant Plaintiff's motion for a directed verdict on the issue of negligence?

7. Did the cumulative effect of the District Court's errors deny Ganz a fair trial?

8. Did the District Court err in giving the "but for" causation instruction instead of the "substantial factor" causation instruction?

On July 16, 1988, Adam Ganz (Ganz) was injured during a "warm-up lap" at the Great Western Stage Race when he crashed while attempting to avoid an eleven-year-old child who had entered the race course. The Great Western Stage Race was a "criterium" race, a circuit race held on a small track entirely closed to traffic. The race was held in Missoula, Montana and was sponsored by the

2

Missoula Downtown Association (MDA) and sanctioned by the United States Cycling Federation (USCF). The MDA is made up of the business, professional, and service community in the downtown Missoula area. The USCF is the national organization that governs amateur bicycle racing in the United States.

Pat Simmons, the executive director of the MDA, applied for and was granted a permit by the USCF for the Great Western Stage Race. The permit named Simmons as the individual promoter and MDA as the promoting organization. Simmons was not familiar with or personally involved in the safety precautions for the race. According to the permit, the promoter's responsibilities included conducting the competition with qualified officials and taking proper safety precautions to protect the personal welfare of both the athletes and the spectators.

The MDA left the safety precautions to a race subcommittee that actually organized and conducted the race. The subcommittee arranged for a chief referee, arranged for marshals, and determined the site of the race. This subcommittee included Mary Cheryl (Hall) Larango, the bicycle coordinator for the City of Missoula, who was responsible for obtaining barricades, cones, and equipment from the City of Missoula. Mesh fencing was installed at the start/finish line, and barricades were placed at the street corners and alleys on the course. Larango testified that Michael Copeland, the chief referee, and Carl Ammons, the chief judge, were in charge of the setup and safety arrangements for the race. Larango was the supplies coordinator, while Ammons was in charge of the technical

3

aspects of the race. Larango was also responsible for recruiting volunteers who served as marshals at the race.

Ammons testified that although he was the only USCF official who was involved in planning the race, he tried to "stay out of being involved with the race as much as possible." Instead of riding in this particular race himself, Ammons agreed to be the chief judge.

On the morning of the race, the marshals were instructed as to their duties by Copeland, and Larango reiterated these directions to the volunteers. The marshals were stationed throughout the course, and at intersections, to keep the course clear from pedestrians, dogs, and vehicles. Marshals Chris Buzan, Marie Ange Buzan, Trina Polzin and her son were stationed at the corner where the incident occurred. Chris Buzan testified that he thought Larango was in charge of the race and only remembers Larango giving instructions to the marshals. He testified that "We had help with barricades and so on, but there were only so many of us and we did the best we could with what we had." Chris Buzan and Marie Ange Buzan testified that they never left their assigned corners during the event, but that they did not see the incident.

At trial, Ganz introduced a number of documents prepared by the USCF, or at the direction of the USCF, that set forth various safety guidelines and directions for conducting criterium bicycle races. The court instructed the jury that this evidence could only be considered for "the purpose of showing the knowledge available to USCF at the time of the incident in question."

4

The pre-trial order made it clear that the defendants did not allege contributory negligence. The court also ruled, prior to trial, that the theory of assumption of the risk could not be raised. At trial, as a stipulated compromise, the parties agreed that the verdict form would provide that Ganz must only show negligence on the part of any defendant or its representatives. Thus, the jury was only asked to determine whether the MDA, the USCF, or any representative of the MDA or the USCF including marshals, volunteers, or race officials were negligent. The jury returned a verdict that none of the defendants was negligent. Ganz appeals from this verdict.

1. Did the District Court err in instructing the jury that the internal USCF documents be considered only for the purpose of showing the knowledge of the USCF at the time of the incident?

At trial, Ganz sought to introduce several internal USCF documents which discussed safety considerations associated with criterium bicycle races. The first document, Plaintiff's Trial Exhibit Number 15, was captioned "Elements of a Safety Guideline" and was prepared by a safety consulting firm. The second, Plaintiff's Trial Exhibit Number 16, was titled "United States Cycling Federation Cycling Event Standards & Safety Manual" and is similar to Exhibit Number 15. This document is on USCF letterhead and is dated March 31, 1986, and denominated as a draft outline. The final document, Plaintiff's Trial Exhibit Number 17, is a 138 page document titled "United States Cycling Federation Cycling Safety Manual" that was prepared in 1987 but was not adopted by the USCF. The jury was instructed that "Plaintiff's Exhibits 15,

5

16, and 17 are admitted solely for the purpose of showing the knowledge available to the USCF at the time of the incident in question." We determine that the jury should not have been limited to considering these exhibits solely for the purpose of showing the knowledge available to the USCF at the time of the incident and, therefore, hold the instruction was in error.

The exhibits should have been admitted without restriction to potentially contest the argument that safety precautions were not feasible, and potentially as an admission that the safety precautions at the Missoula race were inadequate. Although these documents were in "draft" form, they are tantamount to intracorporate communications or interdepartmental memoranda; that is, documents which were never intended for publication. Haines Pipeline Constr. Co. v. Montana Power Co. (1992), 251 Mont. 422, 427, 830 P.2d 1230, 1234 (holding that intracorporate communications concerning matters relevant to the issue should have been admitted as an admission); Cech v. State (1979), 184 Mont. 522, 531, 604 P.2d 97, 101-02 (holding that interdepartmental memorandum stating that the dangerous situation "could very easily be fixed" was admissible to show the feasibility of installing a guardrail). Ganz argues that these documents should have also been admitted to determine the USCF's duty. We disagree. The existence of a duty is a legal question for the court, not the jury, to determine. Roy v. Neibauer (1981), 191 Mont. 224, 226, 623 P.2d 555, 556. Breach of that duty is a question for the jury.

2. Did the District Court err in refusing to admit the "Guidelines to Risk Management" as an exhibit?

6

Ganz attempted to offer Plaintiff's Trial Exhibit Number 2, a USCF document titled "United States Cycling Federation Guidelines to Risk Management," through the testimony of Andy Bohlmann. Bohlmann was the Director of Technical Services for the USCF from 1984 to 1990. The document appears to be the culmination of earlier drafts of the safety manual; virtually the same language was before the jury in the draft safety manual, Trial Exhibit Number 17. This document, Trial Exhibit Number 2, was distributed in 1989, a year after the incident in question, by the USCF to its district representatives. Soon after its distribution, the use of the manual was discontinued.

The transcript indicates that Ganz moved to admit the exhibit over the defendants' objection. The court questioned Ganz's counsel at length as to the possible theories of admissibility of the exhibit. The court concluded that foundation for the exhibit had not been laid and informed counsel that the right questions had not yet been asked. Ganz's counsel continued to question the witness and, through further questioning, elicited the substance of the exhibit. The witness testified that the manual was prepared, adopted, and distributed and that shortly thereafter its use was discontinued. After asking the additional questions which, along with Trial Exhibit Number 17, established that safety manuals had been prepared, and later abandoned, Ganz did not again move to admit Trial Exhibit Number 2. Since the exhibit was not re-offered, the court did not make a final ruling as to its admissibility. Rather, immediately before final jury instructions

were given, and just after a discussion was held off the record, the court stated that, "for record purposes," Trial Exhibit Number 2 was refused based on "insufficient foundation." This ruling was based on the initial offer of the exhibit. Although the substance of the exhibit was elicited through testimony, no subsequent offer of the exhibit was made by counsel. Thus, counsel's failure to re-offer the exhibit discharges us from further addressing this issue on appeal.

3.    Did the District Court err in giving a jury instruction which allowed the jury to consider the USCF's customary practices at other cycling events?

Ganz argues that the District Court erred in giving its Jury Instruction Number 3, which provided:

> Customary methods of conduct are not controlling on the question of negligence but are merely one of the factors to be considered in determining whether or not ordinary care has been exercised.

The court adapted this instruction from the Defendants' Proposed Jury Instruction Number 10, which provided that "Customary acts and practices are one of the factors to be considered in determining whether reasonable care has been exercised."

The court refused to give defendants' instruction, instead, it looked to the source of the defendants' proposed instruction, McCollum v. D & M Lumber Co. (1971), 156 Mont. 335, 479 P.2d 458, and instructed directly from the language of McCollum. This instruction is inapplicable in this situation. Evidence of custom is admissible to show the customary practices of an industry, as a whole, not one particular member of that industry. Here, the only evidence of custom in directing amateur bicycle races is the USCF's

8

own custom; there are no other non-party members of the same industry. Thus, the only "customary" practices that the jury could use to compare the defendants' conduct in the Missoula race would be with other conduct of the same defendant.

As the self-described national governing body for the sport of amateur bicycle racing, the USCF is the only entity that directs and controls the sport of amateur cycling in the United States. The USCF elects a board of directors, appoints committees, promulgates the "Rule Book," trains officials, and approves all permits for all sanctioned bicycle races. Evidence of the safety precautions usually undertaken by the USCF at small criterium bicycle races is entirely self-serving and is not admissible to show the industry custom--the USCF is the "industry." Thus, we hold that the District Court erred in giving its Jury Instruction Number 3.

4. Did the District Court err in refusing to give Plaintiff's Proposed Jury Instruction Number 18?

The evidence established that there was a non-party child who darted onto the race course. Anticipating that the defendants might attempt to blame another person, including the child who entered the race course, Ganz offered Plaintiff's Proposed Jury Instruction Number 18, MPI 2.09, which provided that:

> More than one person may be liable for causing an injury. A defendant may not avoid liability by claiming that some other person, whether or not named as a defendant in this action, helped cause the injury.

Our standard of review for discretionary trial court rulings is whether the district court abused its discretion. Barthule v.

9

Karman (1994), 268 Mont. 477, 487, 886 P.2d 971, 977. In <u>Barthule</u>, we held that it is not reversible error for a district court to refuse an offered instruction unless the refusal affects the substantial rights of the party who proposed the instruction. <u>Barthule</u>, 886 P.2d at 977 (citing Cottrell v. Burlington Northern R.R. Co. (1993), 261 Mont. 296, 306, 863 P.2d 381, 387). Here, however, we determine that the District Court's refusal to give the proposed instruction did affect Ganz's substantial rights. The jury knew that the child entered the race course. As a result, the jury was presented with the potential fault of a non-party and was not instructed that a defendant may not avoid liability by claiming that some other person helped cause the injury.

Ganz's proposed instruction was an accurate statement of Montana law, and clearly was applicable in light of the undisputed evidence that the accident occurred when an unnamed child entered the race course. Ganz anticipated that defense counsel might point a finger at the child. In closing argument, that is precisely what occurred. Defense counsel stated "If, in your view somebody needs to be blamed, there's a youngster who darted out onto the raceway. We're not suggesting that, but if you're the type of person that needs to fix fault someplace, I would suggest that as a possibility." Had the offered instruction been given, the jury would have known that it was not to consider the negligence of a non-party. Newville v. State, Dep't of Family Servs. (1994), 267 Mont. 237, 255-56, 883 P.2d 793, 804. We hold, therefore, that the District Court erred in failing to give Plaintiff's Proposed

10

Instruction Number 18. In failing to give the proposed instruction, the District Court virtually invited the improper statement made by defense counsel during the closing argument. The court's refusal to give Plaintiff's Proposed Instruction Number 18, combined with the defense's closing argument allowed the jury to divert its attention from considering the conduct of the defendants, and invited the jury to entertain the idea that a non-party child may have been at fault.

5. Did the District Court err in refusing to instruct the jury that Ganz was not negligent?

The District Court refused to give Plaintiff's Proposed Instruction Number 12, which, in part, provided:

> Adam Ganz was not negligent in the manner in which he was riding before the accident, in the action he took to avoid the spectator or pedestrian, or in any other action he took leading up to the accident.

The pre-trial order made it clear that the defendants did not allege contributory negligence and, prior to trial, the court also ruled that the theory of assumption of the risk could not be raised. In the opening statement, the defendants stated "We will not present any evidence that Mr. Ganz did anything wrong." Further, during trial, the court instructed the jury:

> Before I recess you for the day, I wanted to read you a brief instruction that I just drafted. It relates to the witness that testified regarding reaction times. You are advised that the evidence from a witness that related to the scientific basis for a bike racer's reaction time is to be used only to weigh the testimony of other witnesses. This evidence is not to be used in any manner to determine if the Plaintiff, Adam Ganz, was negligent in any manner, because any possible negligence on the part of the Plaintiff is not an issue in this lawsuit.

The fact that the defendants did not place Ganz's negligence

11

at issue, and that the court admonished the jury that biker's reaction times and Ganz's "possible" negligence were not issues, makes the court's refusal to give the proposed instruction puzzling. Despite the court's admonishment and the defendants' stipulation that Ganz's negligence was not an issue, the way that the evidence and the testimony unfolded throughout the trial, the issue of bike racer's (i.e. Ganz's) reaction times and the question of Ganz's "possible negligence" may have been on the minds of the jurors. Although we do not hold the court's refusal of Plaintiff's Proposed Instruction Number 12 to be reversible error, the court, on retrial, should avoid the inconsistencies created between the pretrial order (which does not allege any negligence by Ganz) and the court's admonition to the jury concerning Ganz's "possible negligence."

Based on our resolution of issues one through five, it is unnecessary for us to address issues six through eight.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____
Justices

12

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the Court's opinion on issues two, four and five, specially concur on issue three, and dissent on issue one.

With regard to issue three, relating to the jury instruction on customary practices, I agree with the result the Court reaches but not with all that is said. First, it is important to note that Ganz made no objection to any of the evidence introduced on the customary practices of the USCF. Thus, that evidence was properly before the jury for its consideration. Under that circumstance, it ordinarily would be appropriate to instruct the jury on that theory of the defense, under our usual rules requiring jury instruction on theories of the case supported by the evidence. See Buhr v. Flathead County (1994), 268 Mont. 223, 235, 886 P.2d 381, 388.

However, Ganz argues, the Court determines and I agree, that McCollum is not authority for the customary practices instruction given here; that case involved the usual situation of industry-wide customary practices used as a factor in determining the negligence of the defendant, a member or constituent part of that industry. The USCF cites to no authority for the proposition that where, as here, the defendant essentially is "the industry" at issue, it remains appropriate to instruct on that defendant's customary practices as the relevant industry practices. This is the basis on which I would reverse the District Court on this issue.

I dissent from the Court's discussion and resolution in issue one that the District Court improperly limited the jury's consideration of "internal USCF documents." Plaintiff's Trial Exhibit No. 15, the "Elements of a Safety Guideline," is--as its very name reflects--an outline for a safety guideline; it is not a

13