NO. 95-326

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

GARY STRATEMEYER and
CAROL STRATEMEYER,

Plaintiffs and Appellants,

v.

LINCOLN COUNTY, JIM MOREY,
NOEL WILLIAMS, and LARRY DOZEL,
in their capacity as LINCOLN COUNTY
COMMISSIONERS, and RAY NIXON, in his
capacity as LINCOLN COUNTY SHERIFF,

Defendants and Respondents.

FILED

APR 5 - 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                In and for the County of Lincoln,
                The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

                Sydney E. McKenna (argued); Marsillo, Tornabene,
                Schuyler & McKenna, Missoula, Montana

        For Respondents:

                James E. Vidal (argued) and James M. Ramlow;
                Murray & Kaufman, Kalispell, Montana

        For Amicus Curiae:

                Lawrence A. Anderson (argued), Attorney at Law,
                Great Falls, Montana (for Montana Trial Lawyers
                Association)


                        Submitted:   January 11, 1996
                        Decided:  April 5, 1996

Filed:

_____
            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Gary Stratemeyer (Stratemeyer) appeals from the June 19, 1995, Order Granting Motion to Dismiss and Order of Dismissal of the Nineteenth Judicial District Court, Lincoln County, concluding that the statute of limitations barred Stratemeyer's claim, that the Workers' Compensation Act provided Stratemeyer's exclusive remedy, and that Lincoln County, the Lincoln County Commissioners, and the Lincoln County Sheriff (collectively Lincoln County) breached no duty owed to Stratemeyer. We reverse.

We consider the following issues on appeal:

1. Did the District Court err in determining that Stratemeyer's suit was not timely filed?

2. Did the District Court err in determining that the Workers' Compensation Act provided Stratemeyer's exclusive remedy?

3. Did the District Court err in determining that the Montana Safety Act did not apply to Stratemeyer's claim?

This is Stratemeyer's second appeal to this Court arising out of mental injuries he suffered while on duty as a deputy sheriff in Lincoln County, Montana. Stratemeyer v. Lincoln County (1993), 259 Mont. 147, 855 P.2d 506, cert. denied, 114 S.Ct. 600. Stratemeyer observed a traumatic gunshot injury to a suicide victim and alleges that he has suffered severe mental and emotional distress as a result of Lincoln County's failure to train, counsel, and debrief him following the incident.

On May 4, 1990, Stratemeyer, an eight-year veteran of the Lincoln County Sheriff's Department, responded to a suicide call. En route to the scene he learned that the victim, a teenage girl,

was still alive. Upon arriving at the victim's home, Stratemeyer was led to the bedroom where he found a seventeen-year-old girl who had shot herself in the head. The girl, covered in blood, was being held in her father's arms. Stratemeyer forcibly removed the girl from her father's arms and began administering cardiopulmonary resuscitation. When the ambulance arrived, Stratemeyer assisted the crew in loading the girl onto the gurney and into the ambulance. Shortly after escorting the ambulance to the hospital, Stratemeyer was dispatched to the scene of another accident. Later that evening, Stratemeyer learned that the girl had died.

Thereafter, Stratemeyer was plagued by thoughts of the girl's suicide and his decision to tear the victim from her father's arms during her last moments of life. Although Stratemeyer continued to report to work, he began to experience a lack of concentration and mental disorientation. Subsequently, Stratemeyer was diagnosed with post-traumatic stress disorder. Since the incident, Stratemeyer has been unable to return to his job with the Lincoln County Sheriff's Department.

Stratemeyer filed a workers' compensation claim on May 25, 1990, which was denied four days later. After Stratemeyer's workers' compensation claim was denied, he petitioned the Workers' Compensation Court for a hearing regarding his wage loss benefits and medical expenses. The Workers' Compensation Court determined that Stratemeyer did not suffer an "injury" as defined in § 39-71-119, MCA. However, the court determined that subsections 3(a) and 3(b) of § 39-71-119, MCA, which exclude mental stress from the

definition of injury were unconstitutional and violated the Equal Protection Clause of the Montana Constitution.

Lincoln County and its insurer appealed to this Court, and this Court determined that § 39-71-119, MCA, does not violate the Equal Protection Clause of the Montana Constitution because it is rationally related to the legitimate governmental objective of controlling the costs of the workers' compensation program and providing benefits. Stratemeyer, 855 P.2d at 510. While Stratemeyer's case was pending in this Court, Stratemeyer filed a tort claim against Lincoln County in Missoula County District Court on April 30, 1993. The District Court's dismissal of Stratemeyer's tort claim is the subject of the instant appeal.

1. Did the District Court err in determining that Stratemeyer's **suit was** not **timely** filed?

In evaluating a Rule 12(b)(6) motion to dismiss, courts are required to construe a complaint in the light most favorable to the plaintiff. Loney v. Milodragovich, Dale & Dye, P.C. (Mont. 1995), 905 P.2d 158, 160, 52 St.Rep. 1093, 1094. A complaint should not be dismissed unless it appears that the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim. Lonev, 905 P.2d at 160 (citing Boreen v. Christensen (1994), 267 Mont. 405, 408, 884 P.2d 761, 762). The District Court determined that although Stratemeyer's complaint was filed within three years, as required by § 27-2-204, MCA, Stratemeyer had failed to first file his administrative claim with Lincoln County, as required by § 2-Y-301, MCA, which, according to the District Court, was a prerequisite to filing suit. Thus, the District Court

4

determined that Stratemeyer's complaint failed to state a claim upon which relief could be granted because the administrative filing prerequisite of § 2-9-301, MCA, had not been satisfied. This determination is a conclusion of law. See Loney, 905 P.2d at 161. In reviewing a district court's conclusions of law, we determine whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271Mont. 459, 469, 898 P.2d 680, 686; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

Lincoln County asserts that Stratemeyer's claim should be barred because he did not first file his claim with Lincoln County. Section 2-p-301, MCA, sets forth the procedure for filing claims against the State and its political subdivisions. Lincoln County argued that because of Stratemeyer's failure to comply with § 2-9-301, MCA, within the three-year statute of limitations, he is barred by the statute of limitations from pursuing his claim. The District Court agreed, concluding that § 2-P-301 and § 27-2-204, MCA, barred Stratemeyer's claim. Section 2-9-301, MCA, provides:

> (1) All claims against the state arising under the provisions of parts 1 through 3 of this chapter must be presented in writing to the department of administration.
> (2) A complaint based on a claim subject to the provisions of subsection (1) may not be filed in district court unless the claimant has first presented the claim to the department of administration and the department has finally denied the claim. The department must grant or deny the claim in writing within 120 days after the claim is presented to the department. The failure of the department to make final disposition of a claim within 120 days after it is presented to the department must be considered a final denial of the claim for purposes of this subsection. Upon the department's receipt of the claim, the statute of limitations on the claim is tolled for 120 days. The provisions of this subsection do not

5

apply to claims that may be asserted under Title 25, chapter 20, by third-party complaint, cross-claim, or counterclaim.
(3) All claims against a political subdivision arising under the provisions of parts 1 through 3 shall be presented to and filed with the clerk or secretary of the political subdivision.

Lincoln County argues that Stratemeyer's failure to present and file his claim with the Lincoln County Clerk and Recorder within the three-year statute of limitations bars his suit in district court. Stratemeyer contends that he did not pursue his tort claim in district court until this Court's decision in <u>Stratemeyer</u> and the United States Supreme Court's subsequent denial of his petition for a writ of certiorari had been handed down. He argues that had he attempted to submit his tort **claims to** the county before exhausting possible remedies under the Workers' Compensation Act his tort claims would have been dismissed based on the exclusive remedy rule.

Stratemeyer contends that the plain language of § 2-9-301, MCA, does not require him to present his claim to the county clerk before filing in district court. He argues that subsection (3) of § 2-9-301, MCA, applies and that subsection (3), unlike subsections (1) and (2), does not require him to file with the clerk before filing a complaint in district court.

In construing a statute, "the **office** of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The rules of statutory construction require the language to be construed according to its

6

plain meaning. Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088. If the language is clear and unambiguous, then no further interpretation is required; we will resort to legislative history only if the intent cannot be determined from the plain wording of the statute. Clarke, 897 P.2d at 1088. Where the intention of the legislature can be determined from the plain meaning of the words used in a statute, the courts may not go further and apply other means of interpretation. Clarke, 897 P.2d at 1088 (citing Tongue River Elec. Coop. v. Montana Power Co. (1981), 195 Mont. 511, 515, 636 P.2d 862, 864).

Lincoln County asserts that this Court has previously interpreted subsection (3) of § 2-9-301, MCA, to require a plaintiff to first file a claim against the entity before proceeding in district court. See Rouse v. Anaconda-Deer Lodge County (1991), 250 Mont. 1, 4, 817 P.2d 690, 691. However, the language in Rouse on which Lincoln County relies is dicta. In Rouse, we were considering whether the statute of limitations set forth in § 27-2-203, MCA, barred Rouse's claims against Anaconda-Deer Lodge County. Rouse, 817 P.2d at 691. Rouse's compliance with § 2-9-301(3), MCA, was not at issue. Although we stated that "the statutory requirements enacted by the legislature mandate a plaintiff asserting a cause of action against a governmental entity to first file a claim before that entity before filing an action in district court," this sentence is not related to our holding in Rouse and it is contradicted by other language in the opinion. Rouse, 817 P.2d at 691. Later in the opinion we stated that:

7

> With respect to claims against political subdivisions, the statutes do not state that a final disposition of the claim before a local tribunal is a prerequisite to filing an action in district court. The statutes also do not provide an automatic denial period claims made against a county or political subdivision similar to the 120 day period for claims against the state.

Rouse, 817 P.2d at 692. In Rouse, we recognized that the plain language of subsection (3) does not require a final disposition of the claim or an automatic denial period for the claim, yet, inexplicably, we read the "first file" requirement into the statute. This violates the mandate of § 1-2-101, MCA, and our rules for statutory construction. See Clarke, 897 P.2d at 1088. We reject our broad statement in Rouse which would require a claimant to "first file" his claim with the political subdivision before proceeding in district court. This statement is contrary to both our subsequent logic in that case and the plain language of the statute. To the extent that Rouse expresses an opinion inconsistent with our analysis in the instant case, Rouse is expressly overruled. We hold that although subsection (2) of § 2-9-301, MCA, requires that a claim first be presented to the Department of Administration, and that the department dispose of the claim before a plaintiff can file a complaint in district court, subsection (3) of § 2-9-301, MCA, contains no such requirement. Rather, § 2-9-301(3), MCA, merely requires that a claim be filed, it does not require that it be "first presented" or that it be acted upon before a compliant can be filed. Accordingly, we determine that Stratemeyer's complaint, which was filed within three years pursuant to § 27-2-204, MCA, is not barred

8

by his failure to first file an administrative claim with the Lincoln County Clerk pursuant to § 2-9-301(3), MCA

2.    Did the District Court err in determining that the Workers' Compensation Act provided Stratemeyer's exclusive remedy?

The exclusive remedy rule is perhaps the most firmly entrenched doctrine in workers' compensation law.  See, e.g., Workmen's Compensation Act, 1915 Mont. Laws 168; Shea v. North-Butte Mining Co. (1919), 55 Mont. 522, 179 P. 499.  The rationale for adopting workers' compensation legislation was to guarantee workers with work-related injuries some form of compensation in exchange for relinquishing any potential tort claims against their employers.

The enactment of the Workers' Compensation Act was essentially a compromise between industry and labor--workers received guaranteed no-fault recovery, and industry was relieved of the possibility of large and potentially uncapped recoveries in the tort system.  Lewis & Clark County v. Industrial Accident Bd. (1916), 52 Mont. 6, 8-11, 155 P. 268, 269-70. Montana's exclusive remedy provision, § 39-71-411, MCA, provides:

> For all **employments** *covered under the* Workers' *Compensation Act or for* which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive. Except as provided in part 5 of this chapter for uninsured employers and except as otherwise provided in the Workers' Compensation Act, *an employer is not subject to any liability whatever for the death of or personal injury* **to** an **employee** *covered by the Workers' Compensation Act or for* any *claims for contribution or indemnity asserted by a thirdperson from whom damages are sought on account of such injuries or* death. The Workers' Compensation Act binds the employee himself,  and in case  of death binds his personal representative and all persons having any right or claim to compensation for his injury or death, as well as the

9

employer and the servants and employees of such employer and those conducting his business during liquidation, bankruptcy, or insolvency. [Emphasis added.]

Lincoln County argues that Stratemeyer's employment was covered under the Act, thus, that the Act is his exclusive remedy. In asserting that a covered injury is necessary before the exclusivity provision can be applied, Stratemeyer relies on the second sentence of § 39-71-411, MCA, which provides that an employer is not subject to liability for the *"death of or personal injury to an employee."* We find Lincoln County's argument to be unpersuasive

The quid pro quo between employers and employees is central to the Act; thus, it is axiomatic that there must be some possibility of recovery by the employee for the compromise to hold. The scope of immunity from tort relates to the definition of injury under § 39-71-119, MCA. As Professor Larson observed:

> If . . . the exclusiveness defense is a "part of the *quid pro quo* by which the sacrifices and gains of employees and employers are to some extent put in balance," it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except where something of value has been put in their place.

2A Arthur Larson, The Law of Workmen's Compensation § 65.40 (perm. ed. rev. vol. 1995).

By definition, the mental injury which Stratemeyer suffered is excluded from coverage under the Workers' Compensation Act. Section 39-71-119(3), MCA. This is further evidenced by the policy statement added by the 1993 Montana Legislature to § 39-71-105(5),

10

MCA. That section declares the "public policy" of the Workers' Compensation Act. Section 39-71-105(5), MCA, provides:

> It is the intent of the legislature that stress claims, often referred to as "mental-mental claims" and "mental-physical claims", are not compensable under Montana's workers' compensation and occupational disease laws. The legislature recognizes that these claims are difficult to objectively verify and that the claims have a potential to place an economic burden on the workers' compensation and occupational disease system. The legislature also recognizes that there are other states that do not provide compensation for various categories of stress claims and that stress claims have presented economic problems for certain other jurisdictions. In addition, not all injuries are compensable under the present system, as is the case with repetitive injury claims, and it is within the legislature's authority to define the limits of the workers' compensation and occupational disease system.

Thus, it is unequivocally clear that mental injuries, such as Stratemeyer's, are beyond the scope of coverage of the Workers' Compensation Act. Accordingly, under Lincoln County's theory, employees would have no possibility of recovery for mental injuries and yet the employer would be shielded from all potential liability. If that were the case, the quid pro quo, which is the foundation of the exclusive remedy rule would be eliminated. Such a result would be contrary to the spirit and intent of the Workers' Compensation Act. Cunningham v. Northwestern Improvement Co. (1911), 44 Mont. 180, 222, 119 P. 554, 566. Stratemeyer asserts that in light of the restrictive definition of injury in § 39-71-119, MCA, as well as the policy statement in § 39-71-105(5), MCA, there is no quid pro quo for workers who suffer "mental-mental" injuries. We agree. Absent the quid pro quo, the exclusive remedy cannot stand, and the employer is thus exposed to potential tort

11

liability. Errand v. Cascade Steel Rolling Mills (Or. 1995), 888 P.2d 544, 552; Day v. NLO, Inc. (S.D. Ohio 1992), 811 F. Supp. 1271, 1279.

In Day, the plaintiffs asserted tort claims against their employer and the employer contended that the plaintiffs had not suffered an injury under Ohio's Workers' Compensation Law. Day, 811 F. Supp. at 1278. The plaintiffs argued that their injuries did not qualify as compensable injuries under Ohio's Workers' Compensation Act. In asserting their tort claims, the plaintiffs argued that their emotional distress injuries did not fall within the Ohio Workers' Compensation Act's definition of "injury." Day, 811 F. Supp. at 1279 (discussing Ohio Rev. Code § 4123.01(C)). The court noted that the Ohio Act excluded " [p]sychiatric conditions except where the conditions have arisen from an injury or occupational disease. ." Day, 811 F. Supp. at 1279 (quoting Ohio Rev. Code § 4123.01(C)). The court determined that "if an employee's malady does not fall under the definition of an "injury". . . then the exclusivity provisions of workmens' compensation do not apply." Day, 811 F. Supp. at 1279.

The court noted that workers' compensation claims involving emotional distress can be classified as "mental-mental" (mental stimulus, mental consequence), "mental-physical" (mental stimulus, physical consequence), or "physical-mental" (physical stimulus, mental consequence). Day, 811 F. Supp. at 1280 (citing 1B Arthur Larson, The Law of Workmen's Compensation § 42.20-42.25 (perm. ed. rev. vol. 1991). The court concluded that only "mental-mental"

12

claims are actionable in tort in Ohio's courts because Ohio's exclusive remedy rule continues to govern "mental-physical" and "physical-mental" claims. Day, 811 F. Supp. at 1280 (citing Harover v. City of Norwood (Ohio Ct. App. 1988), 559 N.E.2d 1194).

The Day court opined, similar to the Montana Legislature in setting forth its "public policy" statement in § 39-71-105(5), MCA, that the subjectivity, costs, and the nature of damages involved in "mental-mental" claims led Ohio's courts to reasonably determine that workers' compensation does not cover these claims and, as a result, the employee may sue in tort. Day, 811 F. Supp. at 1281-82. However, given the facts of the case before it, the court concluded that the plaintiffs' claims arose from a physical, non-mental stimulus and, as a result, the exclusivity provisions of Ohio's Workers' Compensation Law controlled. Day, 811 F. Supp. at 1280-81.

Likewise, in Errand, the Oregon Supreme Court concluded that the exclusivity provision of Oregon's Workers' Compensation Act did not shield the employer from the employee's tort claims because the employee did not suffer a "compensable injury" as that term is defined in the Oregon Act. Errand, 888 P.2d at 552. The Workers' Compensation Board determined that the injury suffered by the employee was not compensable. Thereafter, Errand brought a civil suit against his employer based on statutory and common law tort claims. Arguing that workers' compensation was Errand's exclusive remedy, the employer moved for and was granted summary judgment.

The Oregon Court of Appeals affirmed stating that "the

13

exclusivity of the Act is not limited to claims that are ultimately determined to be compensable." <u>Errand,</u> 888 P.2d at 546 (citing Errand v. Cascade Steel Rolling Mills, Inc. (Or. Ct. App. 1994), 869 P.2d 358, 360. However, the Oregon Supreme Court reversed, determining that:

> In plaintiff's workers' compensation case, it was established that the employer *had no liability* to compensate plaintiff under the Workers' Compensation Law. *By providing for an employer's freedom from "other" liability [tort liability],* it may be inferred from the exclusivity provision that there must exist, as a predicate for that freedom, *some actual liability under* the *Workers' Compensation Law before the exclusivity provision may* protect *the employer from "all* other *liability*." Thus, the text of the exclusivity provision, specifically its use of the term "liability," further supports the conclusion that the statutory definition of "compensable injury" applies to ORS 656.018. [Emphasis added.]

<u>Errand,</u> 888 P.2d at 548. Although Oregon's Workers' Compensation Act uses different terminology than ours, the underlying principle of the opinion is equally applicable under our Act; namely, that the employer cannot receive the benefit of the exclusive remedy provision when the Act's definition of "injury" precludes any possibility of recovery for the particular injury at issue

Section 1-2-107, MCA, provides that:

> Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears.

Therefore, the definition of injury in § 39-71-411, MCA, must be construed consistently with the restrictive definition of injury in § 39-71-119, MCA. Thus, an injury excluded by § 39-71-119, MCA, necessarily must be excluded as an injury from the exclusive remedy

14

provision of § 39-71-411, MCA. The exclusive remedy rule applies only if the injury suffered by the worker is covered by the Act. Sections 39-71-119 and 39-71-411, MCA; see also Day, 811 F. Supp. at 1280 (finding that Ohio's exclusive remedy rule governs "mental-physical" and "physical-mental" claims). For example, in a "physical-mental" claim, where an employee loses an arm, that employee's remedy under the workers' compensation act is exclusive and he cannot recover in tort for emotional distress. By definition, under Montana's Workers' Compensation Act, Stratemeyer's injury is excluded from coverage. Sections 39-71-105(5) and 39-71-119(3)(a) - (b), MCA; Stratemeyer, 855 P.2d at 508-10. Thus, under both the definition of injury in § 39-71-119, MCA, and the statement of public policy in § 39-71-105(5), MCA, it is evident that "mental-mental" injuries were intended to be outside the scope of coverage of the Workers' Compensation Act. It is equally evident that this exclusion defeats the quid pro quo central to the Act. See Great Western Sugar Co. v. District Court (1980), 188 Mont. 1, 6, 610 P.2d 717, 720. Stratemeyer did not suffer an injury as defined in the Act and, therefore, the Act does not afford him any "remedy;" certainly not an "exclusive" remedy. Errand, 888 P.2d at 548. The exclusion of Stratemeyer's "mental-mental" injury leaves him without workers' compensation coverage and likewise removes Lincoln County's shield from a tort claim. Thus, in keeping with the quid pro quo of the Act, we hold that Stratemeyer is allowed to proceed in tort against his employer.

3. Did the District Court err in determining that the Montana Safety Act did not apply to Stratemeyer's claim?

15

In reviewing a district court's conclusions of law, we determine whether the court's interpretation of the law is correct. Carbon County, 898 P.2d at 686 (citation omitted). The existence of a duty is a legal question for the court, while breach of that duty is a question for the jury. Ganz v. United States Cycling Federation (Mont. 1995), 903 P.2d 212, 215, 52 St.Rep. 1030, 1032. The District Court determined that there was "no duty under Montana law which could have been breached by Defendants" and that Stratemeyer failed to state a claim under the Montana Safety Act, §§ 50-71-201 and 50-71-203, MCA. Specifically, the District Court concluded that:

> Plaintiffs do not cite any authority which would extend the duty imposed by the safe place to work statutes to include alleged injuries for emotional distress which resulted from the Plaintiff observing a traumatic incident not caused by Defendants, and the Court concludes that there is no such Montana authority.

Stratemeyer contends that his **claim is** based on Lincoln County's failure to train, supervise, treat and debrief him following the incident. According to Stratemeyer, the traumatic nature and consequences of responding to the suicide were foreseeable, and post-traumatic stress disorder is a common injury for law enforcement personnel, emergency medical technicians and disaster and emergency services personnel. He alleges that the District Court interpreted the Montana Safety Act too narrowly, when it construed it to include only physical harm. We agree.

Section 50-71-201, MCA, provides in relevant part:

Each employer shall:
      (1)  furnish a place of employment that is safe for each of his employees;

**16**

(4) do any other thing reasonably necessary to
protect the life, health, and safety of his employees.

The plain language of the statute **does** not **limit** its application to only physical harm. Rather, § 50-71-201(4), MCA, and § 50-71-203(3) - (4), MCA, contain the broad duty to "do any other thing reasonably necessary to protect the life, health, and safety of his employees." Although it remains a question for the finder of fact to determine whether the employer breached its duty in failing to train, supervise, treat, or debrief Stratemeyer, we determine here that the Montana Safety Act is applicable to mental as well as physical injuries. We hold that the District Court erred in concluding that the Montana Safety Act does not encompass mental or emotional distress type injuries.

Reversed and remanded.

_____
Justice

We concur.

_____
Chief Justice

_____
_____
_____
_____
Justices

17

Justice Charles Erdmann concurring in part and dissenting in part.

I concur with the majority's holding on Issue 1, respectfully dissent from its holding on Issue 2, and join with Chief Justice Turnage's dissent on Issue 3. Gary Stratemeyer's mental injuries resulted from duties performed within the scope of his employment as a Lincoln County Sheriff's Deputy. See Stratemeyer v. MACO Workers Corp. Trust (1993), 259 Mont. 147, 855 P.2d 506 (Stratemeyer I). The legislature has declared that mental injuries are not compensable under the Workers' Compensation Act. Section 39-71-105(5), MCA.

In Stratemeyer I this Court held that the exclusion of mental injuries without physical manifestations was rationally related to a legitimate government objective of controlling the costs of the workers' compensation program. Stratemeyer then filed a tort action against Lincoln County in district court. The District Court dismissed the action on the basis that the Workers' Compensation Act provided the exclusive remedy for Stratemeyer. The majority has now reversed this determination and has held that even though Stratemeyer's employment was covered under the Act, since his injury is not compensable under the Act the exclusive remedy provisions do not apply. In doing so, the Court avoids a harsh result and if it were within this Court's province to do so, I would certainly join the majority. However, the scope of coverage for employment-related injuries should remain within the province of the legislature and its power to define and amend the Workers' Compensation Act.

18

The majority correctly notes that the exclusive remedy rule is perhaps the most firmly entrenched doctrine in workers' compensation law. Montana's exclusive remedy provision provides in part:

> For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive.

Section 39-71-411, MCA (emphasis added). There is no dispute that Stratemeyer's employment was covered under the Act and therefore the remedy provisions of the Act, no matter how harsh, are exclusive.

I do not agree with the majority's interpretation of the language in § 39-71-411, MCA, which states that "an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the . . . Act." (Emphasis added.) The language is unambiguous and simply states that the employer is not liable for injuries to its employees covered under the Act. The majority misinterprets the language to create an exclusivity provision that is injury-driven, rather than employment-driven. The majority states that "[t]he exclusive remedy rule applies only if the injury suffered by the worker is covered by the Act." On the contrary, under the plain language of § 39-71-411, MCA, the focus should not be on the type of injury incurred but instead on whether the injury occurred within the scope of employment.

The majority supports it conclusion by overlaying the definition of "injury" found in § 39-71-119, MCA, onto § 39-71-411,

19

MCA. Such a stretch is not necessary, as the language of § 39-71-411, MCA, standing on its own, is clear when it states that "[f]or all employments covered under the . . Act . . the provisions of this chapter are exclusive."

The majority's reliance on Errand v. Cascade Steel Rolling Mills (Or. 1995), 888 P.2d 544, is not persuasive. In discussing that case, the majority notes in passing that the language of the Oregon Workers' Compensation Act differs from ours. However, I find the difference in the statutory language to be significant. The Oregon exclusivity provision provides that a complying employer's liability "is exclusive and in place of all other liability arising out of *compensableinjuries* to the subject workers" and that the "rights given to a subject worker .. for *compensable injuries* under this chapter are in lieu of any remedies they might otherwise have for such injuries against the worker's employer." Errand, 888 P.2d at 546-47 (quoting Or. Rev. Stat. 656.018(1) and Or. Rev. Stat. 656.018(2)).

The Oregon Legislature, unlike ours, has chosen to specifically tie its exclusivity provision to "compensable injuries." Our legislature could certainly choose to restrict Montana's exclusivity provision to "compensable injuries," but has chosen not to do so. The Montana Workers' Compensation Act is the exclusive remedy for all employments covered under the Act, regardless of the nature of the injury involved.

I agree with the majority that the quid pro quo between employers and employees is central to the Act, but it is a legislatively created quid pro quo and, within constitutional limits, is defined by the legislature.

The majority's rationale that the employer is shielded from liability only for those injuries covered under the Act essentially rewrites the language of § 39-71-411, MCA. This Court should not assume legislative functions by adding what the legislature has omitted, or by omitting what the legislature has added. Russette v. Chippewa Cree Housing Auth. (1994), 265 Mont. 90, 93-94, 074 P.2d 1217, 1219. The majority has added "covered injury" to the exclusive remedy statute, and therefore, has improperly assumed a legislative function. I would affirm the District Court on Issue 2.

_____
                Justice

21

Chief Justice J. A. Turnage, dissenting:

I join in Justice Erdmann's dissent on Issue 2. I also respectfully dissent from the majority opinion on Issue 3.

The majority has interpreted Montana's Safety Act as creating a duty on the part of the defendants and respondents to take steps to prevent psychological harm from incidents in the workplace. This interpretation stretches the Act far beyond the legitimate purposes for which it was enacted, with no citation to legislative history or case law as support for that extension. The absence of such citation is quite understandable, as none exists.

The Montana Safety Act was adopted in 1969. Discussion by advocates and legislators at the hearings on the bill centered around the need for employers to provide employees with safety equipment such as hard hats and boots. See Minutes of House Public Health, Welfare and Safety Committee, February 4, 1969; Minutes of Senate State Administration Committee, February 24, 1969. When the Act was amended in 1991 to, inter alia, exclude a requirement that employers provide protective footwear for employees, it was again discussed at legislative hearings as a safeguard requiring employers to provide safety equipment for employees. See Minutes of House Labor and Employment Relations Committee, February 21, 1991; Minutes of Senate Labor and Employment Relations Committee, March 12, 1991.

The cases citing the Act, too, have involved the duty to protect from physical injury. See, e.g., Hando v. PPG Industries, Inc. (1989) 236 Mont. 493, 771 P.2d 956 (worker became ill from

paint fumes); Kemp v. Bechtel Const. Co. (1986), 221 Mont. 519, 720 P.2d 270 (worker injured in ditch cave-in); Cain v. Stevenson (1985), 218 Mont. 101, 706 P.2d 128 (worker fell on slippery cinder block "step" at exit from building under construction); Stepanek v. Kober Const. (1981), 191 Mont. 430, 625 P.2d 51 (worker fell from scaffolding); Reynolds v. Burlington N. (1980), 190 Mont. 383, 621 P.2d 1028 (runaway railway cars struck worker); Shannon v. Howard S. Wright Const. Co. (1979), 181 Mont. 269, 593 P.2d 438 (worker fell from ladder).

Expanding the Montana Safety Act to require employers to provide training, supervision, treatment, and debriefing to protect workers from on-the-job psychological harm may be a valid subject for discussion among the peoples' elected representatives in Montana's legislature. In my view, however, it is not appropriate for accomplishment by judicial fiat, as the majority does here. I respectfully dissent.

_____
Chief Justice