CHIEF JUSTICE GRAY,
dissenting.
¶32 I respectfully dissent from the Court’s determination that §50-71-201(4), MCA, of the Montana Safety Act imposed a duty on Moore to “do any other thing reasonably necessary to protect the life, health, and safety of’ Peyatt under the circumstances presented here. I would affirm the District Court’s grant of summary judgment to Moore.
¶33 I agree with the Court’s conclusion that §§ 50-71-201(1) and - 201(3), MCA, did not impose a duty on Moore to provide Peyatt with a safe place of employment at Reuter’s farm in North Dakota because Moore had no contr ol-or right to control-the conditions existing at that location. I also agree that § 50-71-201(4), MCA, imposes a duty upon an employer which is broader in scope than the duty to provide a safe place of employment. In my opinion, however, the Court interprets this duty too expansively. I would conclude that this broader duty did not arise under the facts of this case.
¶34 Section 50-71-201(4), MCA, requires an employer to “do any other thing reasonably necessary to protect the life, health, and safety of his employees.” As the Court observes, the Wisconsin Supreme Court has held that nearly identical language in their work safety statutes creates a duty to provide “safe employment,” which calls for something in addition to a physically “safe place of employment.” See Miller v. Paine Lumber Co. (Wis. 1930), 230 N.W. 702,703. Notably absent from the Court’s discussion of Miller, however, is the Wisconsin court’s actual holding in that case:
We therefore hold that this statute does impose upon employers the duty to warn employees of dangers incident to their employment, not absolutely, but when it is “reasonably necessary *261 to protect the life, health, safety and welfare of such employees.” Miller, 230 N.W. at 703 (emphasis added). Thus, the duty to provide safe employment is a duty to protect employees from dangers “incident to their employment.” “Incident” is defined as “[dependent upon, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)....” BLACK’S LAW DICTIONARY 777 (8th ed. 2004).
¶35 The following facts are set forth in the Court’s opinion and undisputed by the parties. Moore’s contract with the MFBF provided that Moore was to provide commercial transportation services to haul hay. The MFBF would advise donors of hay that the donor must make arrangements for loading the hay onto the transport trucks, and the MFBF informed Reuter he was to arrange for loading his donated hay onto the truck. In other words, Moore was to supply the necessary truck, trailer and equipment, and Reuter was to arrange for loading the hay. Under the contract between Moore and MFBF, Moore had no responsibility for the loading of hay onto the truck and was not involved with the choice of loading method, the choice of loading equipment or the loading equipment’s condition, operation or safety. Moore employed Peyatt to pick up the load of hay in North Dakota and deliver it back to Montana.
¶36 Peyatt was employed to haul hay. The task of loading the hay onto the truck was not within the tasks that his performance of the job of hauling the hay required. I would conclude that any dangers arising from the loading of the hay were not dangers that were “incident to” Peyatt’sjob ofhaulingthehay. Consequently, I would further conclude that it was not “reasonably necessary” for Moore to warn or train Peyatt regarding the hazards of loading hay and using the loading equipment provided by Reuter in order to protect Peyatt’s life, health and safety. Where no reasonable necessity to warn or train exists, no duty arises under § 50-71-201(4), MCA.
¶37 The Court cites Stratemeyer v. Lincoln County (1996), 276 Mont. 67, 915 P.2d 175, in support of its conclusion that Moore owed a duty to Peyatt pursuant to § 50-71-201(4), MCA. I disagree. At the outset, the pertinent issue in Stratemeyer was whether the Montana Safety Act-and the broad duty to do anything reasonably necessary to protect the life, health and safety of employees under § 50-71-201(4), MCA-is applicable in cases where a plaintiff alleges only mental/psychological, as opposed to physical, injuries. The Court did not address § 50-71-201(4), MCA, in the context raised here. To the extent Stratemeyer may be applicable in any way, however, it supports the conclusion that *262 no § 50-71-201(4), MCA, duty arose in this case.
¶38 In Stratemeyer, Deputy Sheriff Stratemeyer sued Lincoln County for damages for psychological injuries he suffered as a result of witnessing the aftermath of a young girl’s suicide. Stratemeyer, 276 Mont. at 70-71, 915 P.2d at 176-77. Clearly, responding to the scene of the suicide was within the requirements of Stratemeyer’s employment as a sheriff s deputy. Consequently, the psychological trauma resulting from responding to the dispatch call and witnessing the scene resulted from a danger “incident to” his employment as a deputy and, as a result, a duty arose under § 50-71-201(4), MCA, for Lincoln County to do anything reasonably necessary to provide him with safe employment-e.g., train, supervise, treat and debrief Stratemeyer with regard to his job requirement of responding to the scene of a suicide. In the present case, Peyatt’s employment did not include the requirement of loading the hay onto the truck and, therefore, the dangers of loading were not “incident to” his employment.
¶39 I would conclude that, while § 50-71-201(4), MCA, does impose a broad duty on an employer to provide employees with “safe employment,” the duty arises only to the degree that is “reasonably necessary” in relation to the actual requirements of the employment. I would further conclude that, in this case, Peyatt was acting outside the range of his employment requirements at the time he was injured and § 50-71-201(4), MCA, does not apply.
¶40 I would affirm the District Court’s grant of summary judgment to Moore and I dissent from the Court’s failure to do so.