No. 96-103

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


DARWIN ZEMPEL,

Petitioner and Appellant,

v.

UNINSURED EMPLOYERS' FUND,

Respondent and Insurer.



APPEAL FROM:   Workers' Compensation Court, State of Montana,
The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Thomas C. Bulman; Bulman Law Associates,
Missoula, Montana

For Respondent:

Mark Cadwallader, Department of Labor & Industry, Legal
Services Division, Helena, Montana



Submitted on Briefs: July 11, 1996

Decided:   May 15, 1997
Filed:


_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.


Darwin Zempel (Zempel) appeals from the judgment of the Workers' Compensation Court dismissing his petition for a declaratory judgment. We affirm. We restate the issues on appeal as follows:

1.  Did the Workers' Compensation Court err in concluding that   39-71-501, MCA (1991), as applied, does not deny Zempel equal protection of the laws?

2.  Did the Workers' Compensation Court err in concluding that   39-71-501,

MCA (1991), as applied, does not deny Zempel access to the courts?

FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed.  In early December of 1991, Zempel was living and working on the Flathead Reservation in Lake County, Montana.  He injured his eye while employed by Rodney Schall (Schall), an enrolled member of the Confederated Salish and Kootenai Tribes (Confederated Tribes) of the Flathead Reservation.  Zempel is not a member of the Confederated Tribes.

At the time of Zempel's injury, Schall was conducting a logging operation on the Flathead Reservation pursuant to a contract with Flathead Post and Pole Yard, Inc. (Flathead Post and Pole), a tribally-owned business.  Schall did not have workers' compensation insurance at the time of Zempel's injury.  The Confederated Tribes carried workers' compensation insurance, obtained through the State Compensation Mutual Insurance Fund (State Fund), which covered tribal members employed by Flathead Post and Pole.

Following his injury, Zempel filed two petitions in the Workers' Compensation Court seeking workers' compensation benefits from the State Fund.  Those petitions were dismissed without prejudice after the parties agreed to proceed in the Confederated Tribes' tribal court (Tribal Court).

In accordance with the parties' agreement, the State Fund, together with Flathead Post and Pole, filed a declaratory judgment action in the Tribal Court, naming Schall and other loggers as respondents.  The State Fund and Flathead Post and Pole requested the Tribal Court to determine whether Schall and the other loggers' contracts with Flathead Post and Pole required them to carry workers' compensation insurance.  The petition also requested the Tribal Court to determine whether the Workers' Compensation Act (the Act) is applicable to a business wholly owned by an enrolled tribal member (Indian business) and operated exclusively within the exterior boundaries of the Flathead Reservation.  Zempel intervened in the action.

The Tribal Court concluded that Schall's contract with Flathead Post and Pole did not require him to carry workers' compensation insurance.  It further concluded that the Act does not apply to an Indian business conducted exclusively within the exterior boundaries of the Flathead Reservation.

Zempel then sought benefits for his injury from the Uninsured Employers' Fund (UEF), a statutory fund which is part of the Act and the general purpose of which is to pay an injured employee of an "uninsured employer" the benefits the employee would have received if the employer had been properly enrolled under the Act.  The UEF denied Zempel's claim for benefits on the basis that Schall was not an "uninsured employer" as defined in  39-71-501, MCA (1991), because he was not--and could not be--required to carry workers' compensation insurance under the Act.

Zempel subsequently petitioned the Workers' Compensation Court for a declaratory judgment, naming the UEF as the respondent.  Zempel and the UEF agreed that Schall could not be required to carry workers' compensation insurance and, therefore, that he was not an "uninsured employer" as defined in  39-71-501, MCA (1991).  By stipulation, they limited the issue before the Workers' Compensation Court to whether  39-71-501, MCA (1991), as applied, denies Zempel equal protection of the laws or access to the courts in violation of the Montana Constitution.

In accordance with well-established case law requiring courts to avoid constitutional questions whenever possible, the Workers' Compensation Court made an independent determination that the Act does not apply to a business wholly owned by tribal members and operating exclusively on the Flathead Reservation.  As a result, the court concluded that Schall was not required to provide workers' compensation insurance for his employees; that, for the same reason, Schall was not an uninsured employer within the meaning of  39-71-501, MCA (1991); and, therefore, that the UEF is not statutorily obligated to pay benefits for Zempel's work-related injury.  Turning to the constitutional questions of whether  39-71-501, MCA (1991), as applied, denied Zempel equal protection of the laws or access to the courts under the Montana Constitution, the Workers' Compensation Court concluded that it did not.  Zempel appeals the court's conclusions on his constitutional arguments.

STANDARD OF REVIEW

It is well-established in Montana that a legislative enactment "is presumed to be constitutional and will be upheld on review except when proven to be unconstitutional beyond a reasonable doubt." City of Billings v. Laedeke (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349. A party attacking the constitutionality of a statute bears a significant burden in establishing its invalidity. In re Matter of Wood (1989), 236 Mont. 118, 122, 768 P.2d 1370, 1373 (citation omitted).

Zempel asserts error by the Workers' Compensation Court in interpreting the law applicable to this case. We review the Workers' Compensation Court's conclusions of law to determine if the court's interpretation of the law is correct. Caekaert v. State Compensation Mutual Ins. Fund (1994), 268 Mont. 105, 110, 885 P.2d 495, 498.

## DISCUSSION

1. Did the Workers' Compensation Court err in concluding that 39-71-501, MCA (1991), as applied, does not deny Zempel equal protection of the laws?

The principal purpose of the Equal Protection Clause is to ensure that citizens are not subject to arbitrary and discriminatory state action. Godfrey v. Montana State Fish & Game Comm'n (1981), 193 Mont. 304, 306, 631 P.2d 1265, 1267. We review state action or legislation subject to an equal protection challenge under one of three levels of scrutiny. See McKamey v. State (1994), 268 Mont. 137, 145-46, 885 P.2d 515, 521. If a fundamental right is infringed or a suspect class is affected, we apply strict scrutiny. McKamey, 885 P.2d at 521. We apply middle-tier scrutiny in limited situations where constitutionally significant interests are implicated by government classification. See Butte Community Union v. Lewis (1986), 219 Mont. 426, 434, 712 P.2d 1309, 1314. In all other situations, we apply the rational basis test; the inquiry under this test is whether the classification is rationally related to a legitimate government objective. McKamey, 885 P.2d at 521.

The Workers' Compensation Court applied the rational basis test to Zempel's equal protection challenge to 39-71-501, MCA (1991). Zempel contends that, pursuant to Lewis, middle-tier scrutiny applies because, like welfare benefits, workers' compensation benefits are "lodged in" Article XII, Section 3(3) of the Montana Constitution. We disagree that Lewis has application here.

At the time Lewis was decided, Article XII, Section 3(3) of the Montana Constitution provided: "The legislature shall provide such economic assistance and social and rehabilitative services as may be necessary for those inhabitants who, by reason of age, infirmities, or misfortune may have need for the aid of society." See Lewis, 712 P.2d at 1310 (emphasis added). We determined that this section did not create a fundamental right to welfare benefits because the directive to provide such benefits was not found within the Declaration of Rights and welfare was not a right " 'without which other constitutionally guaranteed rights would have little meaning.' " See Lewis, 712 P.2d at 1311 (citation omitted). We noted, however, that welfare benefits were sufficiently important to warrant reference in our Constitution and concluded that, by virtue of the directive contained in Article XII, Section 3(3), welfare benefits were "lodged in" the Montana Constitution. See Lewis, 712 P.2d at 1311, 1313. On that basis, we held that classifications which abridge welfare benefits are subject to heightened scrutiny, or a middle-tier analysis. Lewis, 712 P.2d at 1311, 1313-14.

Article XII, Section 3(3) of the Montana Constitution was amended in 1988, approximately two years after we decided Lewis. The amended version was in effect at the time of Zempel's work-related injury.

As amended, Article XII, Section 3(3) provides: "The legislature may provide such economic assistance and social and rehabilitative services for those who, by reason of age, infirmities, or misfortune are determined by the legislature to be in need." (Emphasis added.) Unlike the version of Article XII, Section 3(3) at issue in Lewis, the amended version does not contain a directive that the legislature shall provide welfare benefits. Thus, the constitutional underpinning for our application of heightened scrutiny to a statute abridging welfare benefits in Lewis no longer existed at the time of Zempel's injury. As a result, Lewis provides no support for Zempel's argument for application of middle-tier analysis here and it is not necessary to determine whether workers'

compensation benefits are "lodged in" Article XII, Section 3(3) of the Montana Constitution.

Moreover, we consistently have applied the rational basis test to equal protection challenges in workers' compensation cases. See, e.g., Stratemeyer v. Lincoln County (1993), 259 Mont. 147, 151, 855 P.2d 506, 509 (Stratemeyer I); Burris v. Employment Relations Div./Dept. of Labor and Indus. (1992), 252 Mont. 376, 380, 829 P.2d 639, 641; Cottrill v. Cottrill Sodding Serv. (1987), 229 Mont. 40, 43, 744 P.2d 895, 897. In fact, we have expressly rejected use of the middle-tier level of scrutiny in analyzing equal protection arguments in a workers' compensation case. See Burris, 829 P.2d at 641 (citation omitted). We conclude, therefore, that the rational basis test applies in determining whether    39-71-501, MCA (1991), as applied, denies Zempel equal protection of the laws.

Zempel's equal protection argument is not a model of clarity. He contends that he is advancing an "as applied" challenge, rather than a facial challenge, to the definition of uninsured employer contained in    39-71-501, MCA (1991), in that application of the definition to his situation precludes his entitlement to the same UEF benefits as "all other workers." This approach apparently recognizes that a facial equal protection challenge to the definition of uninsured employer contained in    39-71-501, MCA (1991), is not available because Zempel is excluded from UEF coverage by controlling principles of federal law regarding state jurisdiction over Indian reservations, rather than by the statutory definition itself. On the other hand, Zempel relies on our analysis of a facial equal protection challenge in Arneson v. State,  by Dept. of Admin. (1993), 262 Mont. 269, 864 P.2d 1245, in arguing that the statutory definition of uninsured employer is under-inclusive due to the exclusion from UEF coverage of injured workers employed by Indian businesses operating exclusively within the exterior boundaries of the Flathead Reservation.

In considering Zempel's equal protection challenge, we initially address the Act itself and the underlying purpose of the UEF, which is part of the Act. The Montana legislature enacted the Act to provide employees who experience work-related injuries with guaranteed compensation on a no-fault basis while relieving employers from potential uncapped tort recoveries. See Stratemeyer v. Lincoln County (1996), 276 Mont. 67, 74, 915 P.2d 175, 179 (Stratemeyer II); see also    39-71-105(1), MCA (1991). To that end, and with certain statutory exceptions, employers in Montana are subject to the Act and are required to provide workers' compensation insurance coverage to their employees through enrollment in one of three workers' compensation insurance plans. See    39-71-401, MCA (1991). Nothing in the 1991 Act specifically exempts or excludes Indian businesses operated exclusively on an Indian reservation in Montana from being subject to the Act.

The UEF was created as part of the Act to provide an injured employee of an uninsured employer with the same benefits which the employee would have received had the employer been properly enrolled in a workers' compensation plan. See    39-71-502, MCA (1991). For UEF purposes, "uninsured employer" is defined as an "employer who has not properly complied" with the Act by enrolling in a workers' compensation insurance plan, as required by    39-71-401(1), MCA (1991). See    39-71-501, MCA (1991). Thus, only injured employees of employers meeting the definition of uninsured employer contained in    39-71-501, MCA (1991), are entitled to the "substitute" workers' compensation benefits the UEF was created to provide to injured employees of employers who have failed to "properly compl[y]" with the Act. See    39-71-501 and 39-71-502, MCA (1991).

The UEF is part of the Act and inseparable from it. The UEF is funded by reimbursed benefits from statutorily-defined "uninsured employers"--employers subject to the Act but who fail to meet its requirements--as well as by penalties assessed against such employers. See    39-71-504, MCA (1991). As a result, the UEF has no funding mechanism to provide "substitute" workers' compensation benefits to injured employees of employers not subject to the Act. If the UEF were to provide coverage to employees whose employers are not subject to the Act, such as employees of Indian businesses operating exclusively on Indian reservations, it would be unable to recoup such benefits from the exempt employers. Nor would the UEF have authority to assess penalties

against such employers.

Zempel's equal protection argument essentially asks us to unhook the UEF from the Act of which it is an integral part, but it is the tie between the two--and the viability of the UEF as a direct result of that tie--which is the very purpose for which the UEF was created. The limitation on entitlement to UEF benefits to injured employees of uninsured employers subject to the Act bears a reasonable relationship to that purpose because it is only those employers subject to the Act in the first instance upon whom the State can impose the reimbursement and penalty obligations which provide the source of the UEF benefits.

In this regard, it is critical to recall that equal protection does not require that all persons be treated alike regardless of whether their circumstances are the same; it requires only that all persons be treated alike under like circumstances. See Billings Assoc. Plumbing, Etc. v. State Bd. of Plumbers (1979), 184 Mont. 249, 253, 602 P.2d 597, 600 (citations omitted). Here, Zempel's circumstances are unlike those of injured employees working for uninsured employers as defined by  39-71-501, MCA (1991). Statutorily-defined uninsured employers have failed to comply with an Act to which they are subject, but they remain subject to the state's authority to enforce funding for the UEF through reimbursement and penalties. Schall, on the other hand, has not failed to comply with the Act because he is not subject to it by virtue of federal Indian law; nor is he subject to the state's authority to fund UEF benefits through imposition of reimbursement and penalty obligations on employers subject to the Act. We conclude, therefore, that because Indian businesses operating exclusively on Indian reservations are not subject to the Act, the exclusion of injured employees of such employers from UEF coverage--via application of the  39-71-501, MCA (1991), definition of "uninsured employer"--is rationally related to the legitimate government purpose of providing "substitute" workers' compensation benefits to injured employees of employers subject to--but failing to comply with--the Act.

We note that Zempel relies entirely on Arneson in support of his argument that the  39-71-501, MCA (1991), definition of "uninsured employer" is under-inclusive and, therefore, violates equal protection as applied to him. As noted above, however, Arneson involved a facial equal protection challenge to a statute. Our analysis there, which involved whether a rational basis existed for a legislative classification, cannot be superimposed onto Zempel's "as applied" challenge to  39-71-501, MCA (1991), in this case, because here it is federal law regarding state jurisdiction over Indian reservations--rather than a legislative classification--which results in the classification excluding Zempel from UEF coverage.

Moreover, we agree with the Workers' Compensation Court's observation that, when citizens of Montana avail themselves of jobs on an Indian reservation, they agree to abide by tribal rules. It is no more onerous to exclude a Montana citizen who decides to work on an Indian reservation from the protections of the Act--and the UEF--than to exclude a Montana citizen who decides to work in another state.

Accordingly, we hold that the Workers' Compensation Court did not err in concluding that  39-71-501, MCA (1991), as applied, does not deny Zempel equal protection of the laws.

2. Did the Workers' Compensation Court err in concluding that  39-71-501, MCA (1991), as applied, does not deny Zempel access to the courts?

Relying on Article II, Section 16 of the Montana Constitution, Zempel argues that the Workers' Compensation Court erred in concluding that  39-71-501, MCA (1991), as applied, does not deny him access to the courts. His denial of access to the courts argument is based entirely on his lack of entitlement to the legal remedies afforded injured employees under the Act. Specifically, he points out that he is denied access to the Workers' Compensation Court because his employer, Schall, is not subject to the Act and that he is precluded from bringing an independent cause of action under  39-71-515, MCA (1991), because Schall is not an uninsured employer as defined in  39-71-501, MCA (1991). We observe that the concessions inherent in Zempel's specifications of denial of access--that Schall is not subject to the Act and is not an "uninsured employer"--constitute an implicit concession that the Act is inapplicable.

Article II, Section 16 of the Montana Constitution provides that "[c]ourts of justice shall be open to every person. . . ." Whatever the parameters of this right of access to the courts may be, Zempel cites to no authority pursuant to which a court action under a purely statutory scheme such as the Act must be permitted even where the Act itself is conceded to be inapplicable to the case at hand.

Furthermore, nothing in 39-71-501, MCA (1991), as applied to Zempel, precludes the viability of non-workers' compensation claims or actions under such circumstances and, indeed, an employee of such an employer not subject to the Act is not limited by the exclusive remedy provision contained within the Act. See 39-71-411, MCA (1991); see also Kleinhesselink v. Chevron, U.S.A. (Mont. 1996), 920 P.2d 108, 111, 53 St.Rep. 668, 669; Stratemeyer II, 915 P.2d at 181. Thus, while application of 39-71-501, MCA (1991), may preclude judicial access and remedies under the Act, it does not prevent Zempel from pursuing non-Act claims against Schall.

It is true that federal law may limit Zempel's legal recourse against Schall to an action in the Tribal Court, because state courts generally do not have jurisdiction over civil causes of action by a non-Indian against an Indian where the event at issue occurred on an Indian reservation; assumption of jurisdiction by the state in such actions would "undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the rights of Indians to govern themselves." See Williams v. Lee (1959), 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251, 255. However, Zempel has cited to no authority, and this Court has found none, which requires--or even allows--guaranteed access to state courts for an injury where such access is precluded by federal law prohibiting the exercise of state jurisdiction over the claim. Accordingly, we hold that the Workers' Compensation Court did not err in concluding that 39-71-501, MCA (1991), as applied, does not deny Zempel access to the courts.

Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ WILLIAM E. HUNT, SR.
/S/ JAMES C. NELSON

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion. However, consistent with my dissenting opinion in Stratemeyer v. MACO Workers' Compensation Trust (1993), 259 Mont. 147, 155, 855 P.2d 506, 511, I would apply middle-tier scrutiny to any legislative classification which denies workers' compensation benefits to distinct classes of injured employees.

Nevertheless, applying middle-tier scrutiny to the distinction alleged in this case, I would arrive at the same conclusion that the majority has reached pursuant to the rational basis test.

For these reasons, I specially concur with the majority opinion.

/S/ TERRY N. TRIEWEILER