No. 03-116

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 329

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

JAMIE RAY GOURAS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DC-01-35,
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Terryl T. Matt, Attorney at Law, Cut Bank, Montana

       For Respondent:

           Honorable Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

           Larry Epstein, County Attorney, Cut Bank, Montana

Submitted on Briefs:  September 18, 2003

Decided:  November 23, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Jamie Ray Gouras (Gouras) appeals from the judgment, entered by the Ninth Judicial District Court, Glacier County, finding him guilty of possession of dangerous drugs, a felony, in violation of § 45-9-103(1), MCA, and challenges the District Court's denial of his suppression motion. We affirm.

¶2     We rephrase the issues on appeal as follows:

¶3     1. Did the District Court err in denying Gouras's motion to suppress evidence on the grounds that officers lacked a particularized suspicion to make an investigatory stop of the vehicle in which Gouras was a passenger?

¶4     2. Did the District Court err in denying Gouras's motion to suppress evidence on the grounds that the investigatory stop exceeded its scope and purpose?

### FACTUAL AND PROCEDURAL BACKGROUND

¶5     On May 24, 2001, Glacier Country Sheriff Gary Racine (Sheriff Racine) received a telephone call from Terry Wellman (Wellman), the owner of the War Bonnet Inn (Inn) in Browning, Montana, concerning three Inn guests, including Gouras, who had just checked out. Wellman advised Sheriff Racine that his housekeeping staff had reported finding remnants of dangerous drugs and drug paraphernalia in the room vacated by Gouras. Wellman also indicated that the occupants of the room had checked out moments before and were leaving in a small red vehicle with Washington State license plates, and further indicated that the vehicle's license plate had expired tags. Sheriff Racine requested Wellman to secure the room, and stated that he was dispatching an officer to the Inn.

¶6      Sheriff Racine then contacted FBI Special Agent Brad Michael (Agent Michael), the resident agent in Browning, and advised him of Wellman's report. FBI Special Agent Clinton Dalrymple (Agent Dalrymple), and Blackfeet Law Enforcement Criminal Investigator Kyle Sinclair (Investigator Sinclair), who were present in Agent Michael's office at the time of Racine's call, immediately left the office to attempt to locate the vehicle. Agent Michael and another officer proceeded to the Inn, where they conducted an investigation. Sheriff Racine also contacted Deputy Vernon Billedeaux (Deputy Billedeaux) and directed him to Browning to assist with the investigation.

¶7      Upon Agent Michael's arrival at the Inn, he obtained the consent of Wellman to search the vacant room, where he discovered apparent marijuana stems and seeds on the floor and table, as well as marijuana residue in the bathtub. He conducted field tests on the evidence, which confirmed the presence of THC, the active ingredient in marijuana. In the meantime, Agent Dalrymple and Investigator Sinclair located a red vehicle, with matching Washington State plates and license number, in the vicinity of the Inn, and began to follow the vehicle. Because he and Agent Dalrymple were in an unmarked vehicle, Investigator Sinclair requested Montana Highway Patrol Officer Andrew Knapp (Officer Knapp) to initiate a traffic stop of the suspect vehicle because it was believed to have expired license plate tags. Knapp initiated the stop, and Agent Dalrymple, Investigator Sinclair, and Deputy Billedeaux arrived at the scene moments later.

¶8      Upon Officer Knapp's initial inquiry, he determined that Gouras was one of three occupants in the vehicle. Upon inspection, the officers determined that the license plate on

3

back had a current tag, but that the tag on the front license plate was expired. Unaware of Washington State law, the officers contacted Washington State officials to determine whether Washington law required current tags on both the front and rear license plates. In that interim, Agent Michael radioed Agent Dalrymple and informed him of the drug evidence he had obtained during the search of Gouras's room at the Inn. Gouras and the other occupants were then immediately arrested. The officers later learned that Washington law requires that a registered vehicle have two license plates, but requires valid tags on the rear plate only.

¶9 The officers secured the vehicle and conducted a drug dog sniff of the exterior, which revealed the presence of drugs. The vehicle was then impounded and a search warrant obtained. Pursuant thereto, the vehicle was searched and officers seized marijuana, a scale, baggies, and evidence indicating that Gouras and his companions were removing the tobacco from Swisher Sweet cigars and replacing the contents with marijuana.

¶10 On June 6, 2001, Gouras was charged with criminal possession of dangerous drugs, a felony, in violation of § 45-9-102(1), MCA; criminal possession with the intent to distribute, a felony, in violation of § 45-9-103(1), MCA; and criminal possession of drug paraphernalia, a misdemeanor, in violation of § 45-10-103, MCA.

¶11 On August 16, 2001, Gouras filed a motion to suppress evidence, which was denied by the District Court after hearing. On October 9, 2002, pursuant to a plea bargain agreement, Gouras pled guilty to criminal possession of dangerous drugs, reserving the right to appeal the District Court's denial of his suppression motion. He appeals.

4

¶12    Our review of rulings on motions to suppress is twofold: first, we review the court's findings of fact to determine whether they are clearly erroneous, that is, whether the findings are supported by substantial evidence, whether the district court misapprehended the effect of the evidence, or whether the court is nevertheless left with a definite and firm conviction that the district court made a mistake; second, we engage in a plenary review of the conclusions of law to determine whether the district court's interpretation of the law is correct. *State v. Martinez*, 2003 MT 65, ¶ 19, 314 Mont. 434, ¶ 19, 67 P.3d 207, ¶ 19.

## *DISCUSSION*

¶13    Gouras first argues the District Court erred by denying his motion to suppress evidence obtained during the search of his vehicle because the investigatory stop was not based upon a particularized suspicion. He asserts that the information provided by Wellman, as a citizen informant, failed to satisfy the three-part test of reliability established in *State v. Pratt* (1997), 286 Mont. 156, 165, 951 P.2d 37, 42-43. Alternatively, he argues that if Officer Knapp had a particularized suspicion to initiate the investigatory stop, it was nonetheless unlawful because officers extended the stop longer than necessary to effectuate its original purpose.

¶14    **Did the District Court err in denying Gouras's motion to suppress evidence on the grounds that officers lacked a particularized suspicion to make an investigatory stop of the vehicle in which Gouras was a passenger?**

¶15    Whether a particularized suspicion exists at the time of an investigatory stop is a question of fact that the district court determines by considering the totality of the

5

circumstances confronting the officer at the time of the stop. *State v. Hall*, 2004 MT 106, ¶ 8, 321 Mont. 78, ¶ 8, 88 P.3d 1273, ¶ 8. Moreover, under § 46-5-401(1), MCA,

> In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

¶16 Section 46-5-401(1), MCA, is a codification of this Court's holding in *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296, wherein we adopted a two-part analysis set forth in *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. We held that to establish a particularized suspicion, first, the State must show objective data from which an experienced officer can make certain inferences, leading to, second, a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing. *Gopher*, 193 Mont. at 194, 631 P.2d at 296.

¶17 Gouras argues Officer Knapp did not have an objective basis to support his particularized suspicion that Gouras and his companions had been or were engaged in criminal activity in order to justify the investigatory stop. He asserts that the information provided by Wellman, as a citizen informant, did not satisfy the requirements of the *Pratt* holding, and was therefore unreliable, because Wellman did not personally observe the drug evidence he reported. Rather, Wellman's report of drug activity in the hotel room was based on a second hand report from the Inn's staff. Thus, Officer Dalrymple and Investigator Sinclair's observations of the suspect vehicle did not corroborate the information purported by Wellman.

6

¶18 In *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43, we held that when an officer receives information from a citizen informant, the reliability of the informant's information should be assessed by three factors, including (1) whether the informant identifies himself, thus, subjecting himself to criminal and civil liability if the report is false, (2) whether the report is based upon the personal observations of the informant, and (3) whether the officer's own observations corroborated the informant's information. *See also State v. Elison*, 2000 MT 288, ¶ 16, 302 Mont. 228, ¶ 16, 14 P.3d 456, ¶ 16 ("[w]here an investigative stop stems from the tip of a citizen informant, this Court has adopted a three-part test to determine the reliability of the citizen informant's information" and setting forth the *Pratt* test).

¶19 We need not address Gouras's initial contention that Officer Knapp's stop was improperly based on second-hand drug-related information reported by Wellman's employee, because the investigatory stop was not based on the possible drug activity, but on Wellman's report that the vehicle had expired tags. Thus, we take up Gouras's assertion that the investigatory stop, premised upon a reported expired license tag, fails to comply with the three-factor *Pratt* analysis.

¶20 First, Wellman provided his identity and his status as the Inn's proprietor to Sheriff Racine, thereby subjecting himself to potential civil and criminal liability if his information had been false, *Pratt*, 286 Mont. at 165, 951 P.2d at 42-43, and satisfying the first factor. About the second and third factors, the District Court determined as follows:

> Criminal Investigator Sinclair knew that a reliable citizen had told Sheriff Racine . . . [that he] had personally observed a possible criminal act–operating a motor vehicle with expire[d] license plates. Criminal Investigator Sinclair

7

corroborated this information when he observed the vehicle traveling away from the motel as reported by the citizen informant. The totality of these circumstances formed the requisite particularized suspicion necessary to an investigatory stop that Criminal Investigator Sinclair effected through the instrumentality of Montana Highway Patrol Officer Knapp.

Wellman provided information about his exact location, and reported that he had just personally observed Gouras and his companions exit the Inn's parking lot in a red vehicle with Washington plates which had expired tags. Gouras does not contest that Wellman made this report. Further, regarding the third factor, Wellman's report was corroborated when Agent Dalrymple and Investigator Sinclair observed the described vehicle, including license plate number, in the vicinity of and traveling away from the Inn. *See Pratt*, 286 Mont. at 166, 951 P.2d at 43 ("corroboration of a tip occurs when the officer either observes illegal activity or finds the person, the vehicle, and the vehicle's location substantially described by the informant"). Therefore, the requirements for reliability were met and Wellman's information formed the basis for a particularized suspicion to initiate the investigatory stop.

¶21 Gouras also argues that Officer Knapp, as the officer who initiated the investigatory stop, must have personally assessed the reliability of the informant's tip before making the stop. He contends that personal observation by Officer Knapp was necessary to support a finding of particularized suspicion. We disagree.

¶22 This Court has held that an officer who is unaware of the factual basis for a particularized suspicion may make an investigatory stop upon a directive or request for action from another officer. *State v. Olmsted*, 1998 MT 301, ¶ 34, 292 Mont. 66, ¶ 34, 968 P.2d 1154, ¶ 34; *see also Boland v. State* (1990) 242 Mont. 520, 524, 792 P.2d 1, 3,

8

*overruled on other grounds by Bush v. State, Dep't of Justice*, 1998 MT 270, 291 Mont. 359, 968 P.2d 716. In these situations, the directing officer's knowledge of the underlying facts and circumstances is imputed to the acting officer, with the rationale being that the officer is entitled to assume that whoever issued the directive or request had a particularized suspicion. *Pratt*, 286 Mont. at 166, 951 P.2d at 43.

¶23 Therefore, Gouras's argument that Officer Knapp must personally assess the reliability of Wellman's tip is unpersuasive. Officer Knapp, as the acting officer, could reasonably rely on the request to stop by Investigator Sinclair, who had corroborated the information relayed from Wellman through Sheriff Racine and Agent Michael. Based on the information provided by Wellman, the officers had a particularized suspicion of wrongdoing. Similar to *Pratt*, where the Court held that the officer making the stop had particularized suspicion to do so, although that officer did not personally witness any criminal activity and was only relying on information supplied by dispatch, here, Investigator Sinclair, by timely identifying the suspect vehicle and corroborating the information relayed through Sheriff Racine, had a particularized suspicion to initiate an investigatory stop, and properly requested Officer Knapp to make the stop. We thus conclude that the District Court properly denied the motion to suppress.

¶24 **Did the District Court err in denying Gouras's motion to suppress evidence on the grounds that the investigatory stop exceeded its scope and purpose?**

¶25 Gouras next challenges the duration of the investigatory stop, arguing the officers unlawfully exceeded the scope necessary to effectuate the original purpose, pursuant to

9

§§ 46-5-401 and -403, MCA.[1]  However, Gouras failed to present this argument in his suppression motion and the supporting brief, instead raising it for the first time in the concluding paragraphs of his reply brief, as an alternative basis for suppressing the State's evidence.  Further, Gouras did not make this argument in the supplemental brief he filed after the suppression hearing.

¶26    "The general rule is that issues not raised before the trial court and new legal theories are not considered by this Court on appeal because it is unfair to fault the trial court on an issue it was never given an opportunity to consider." *State v. Shook*, 2002 MT 347, ¶ 19, 313 Mont. 347, ¶ 19, 67 P.3d 863, ¶ 19 (citing *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15).  The transcript reveals that minimal evidence was introduced in regard to the duration of the stop, and further, that this testimony was contradictory.  The District Court did not attempt to resolve this factual question, and, importantly, did not address the issue in its order.  Thus, we conclude that the issue was not

---

[1]Section 45-5-401, MCA, provides:
**Investigative stop**.  In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Section 46-5-403, MCA, provides:
**Duration of a stop**.  A stop authorized by 46-5-401 or 46-5-411 may not last longer than is necessary to effectuate the purpose of the stop.

sufficiently raised to bring it to the attention of the District Court, and, therefore, was not preserved for appeal. Therefore, we decline to address it.

¶27    Affirmed.


                                                    /S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER