JUSTICE LEAPHART,
concurring in part and dissenting in part.
¶37 I concur with the resolution of issue one and dissent as to issue two: whether Leah Gonzales was unlawfully arrested.
¶38 As the court notes, police are allowed to conduct a brief investigatory stop as long as they have a particularized suspicion that criminal activity is currently taking place and that the person in question is or has been engaged in wrongdoing. State v. Tackitt, 2003 MT 81, ¶ 24, 315 Mont. 59, 67 P.3d 295; §46-5-401(1), MCA. Whether particularized suspicion exists is a question of fact. State v. Deines, 2009 MT 179, ¶ 8, 351 Mont. 1, 208 P.3d 857. In light of the totality of circumstances set forth below, I submit that the ultimate question of fact (was there particularized suspicion) is in dispute and must be resolved by a jury:
¶39 1. Leah Gonzales (Leah) dialed 911 on her cell phone after the defendant entered the store.
¶40 2. Upon receiving the 911 call, the dispatchers knew that there was a robbery in progress.
¶41 3. The dispatchers were able to determine that the call came from Leah’s cell phone.
¶42 4. The dispatchers were able to determine that Leah’s last known place of employment was a Town Pump.
¶43 5. Police officers responded to the Town Pump where they arrested the defendant as he exited.
¶44 6. In response to the officers’ commands, Leah came out of the Town Pump, bare-footed and wearing her Town Pump apron.
¶45 7. Officer Anderson was able to identify Leah based upon a prior contact.
¶46 8. Officer Anderson also knew that Leah was pregnant and suspected that Leah was the store clerk.
¶47 Given the above totality of circumstances, a very strong argument can be made that there was no basis for conducting an investigatory stop of Leah. That is, there was no basis for concluding that Leah was or had been engaged in wrongdoing. Section 46-5-401(1), MCA. At the very least, looking at the totality of the circumstances, there is a *156 question of fact as to whether there was particularized suspicion justifying having Leah lie on the ground and be hand-cuffed.
¶48 The District Court erred in concluding as a matter of law that there was no question of fact as to the existence of particularized suspicion. I would reverse the grant of summary judgment on issue two and allow the matter to be presented to a jury.
¶49 Finally, I confess that after reading Justice Nelson’s dissent on the issue of the public duty doctrine, I thought that perhaps I had missed what Justice Nelson depicts as the main issue on appeal; whether the public duty doctrine should be thrown out as violative of Article II, sec. 18 of the Montana Constitution and §2-9-102, MCA. Upon re-reading the briefs, however, I re-affirmed my recollection that, although the appellant argued that the exceptions to the public duty doctrine were triggered, there was no constitutional or statutory challenge to the doctrine itself. Nowhere in the five briefs on appeal is there any citation to Article II, sec. 18 of the Montana Constitution or to §2-9-102, MCA. None of the parties suggest that the Court should retain or reject the public duty doctrine. In other words, the viability of the public duty doctrine was not an issue in this case.
¶50 In my view, constitutional issues are best left to resolution after a party has raised a constitutional challenge and the issues have been briefed and argued. As Justice Nelson frequently points out when writing for the Court, we consistently refuse to address issues raised for the first time on appeal. Matter of M.B., 350 Mont. 76, in M.B., the appellants sought, for the first time on appeal, to raise ‘Various constitutional issues” re the application of ICWA. For the Court, Justice Nelson stated: “We consistently refuse to consider theories or issues raised for the first time on appeal.” M.B. at 80, n. 1; Hajenga v. Schwein, 336 Mont. 507, ¶ 21, 155 P.3d 1241 (it is unfair to fault the trial court for failing to rule on an issue it was never given an opportunity to consider); In re A.S., 334 Mont. 280, ¶ 35, 146 P.3d 778; In re Estate of Kindsfather, 326 Mont. 192, 108 P.3d 487 (2005); Bekkedahl v. McKittrick, 312 Mont. 156, ¶ 31, 32 (“After examining the record in this case, we conclude that the issue was not raised, briefed or argued in the district court. Therefore we decline to address it.”) 58 P.3d 175 (2002); State v. Shook, 313 Mont. 347, ¶ 19, 67 P.3d 863 (2002); Marriage of O'Moore, 308 Mont. 258, ¶ 3, 42 P.3d 767; State v. Knox, 307 Mont. 1, ¶ 3, 36 P.3d 383 (2001); and. Renner v. Nemitz, 306 Mont. 292, 297, 33 P.3d 255 (2001), in which Justice Nelson, for the Court, points out that exceptions to the above rule typically apply to criminal cases. The present case, of course, is not a criminal case.
*157 ¶51 If we are going to fault counsel and parties for belatedly attempting to raise issues which were not raised below or preserved for appeal, we should hold ourselves to the same standard and not offer gratuitous opinions on significant constitutional issues which neither the parties, the attorneys nor the lower court have addressed.
¶52 Our job is to resolve disputes which are brought before the Court, not to prejudge issues by rendering unsolicited opinions on constitutional matters without the benefit of any briefing or argument.